IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YVONNE LEBLANC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE HILL SCHOOL | : | NO. 14-1674 |

**MEMORANDUM**

**Padova, J.**                                                           **January 12, 2015**

Plaintiff brings this sex and age discrimination action against her former employer, The Hill School ("the School") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.* The School has moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following reasons, we grant the Motion in part, and deny it in part.

I.      **BACKGROUND**

The Amended Complaint alleges the following facts.  Plaintiff is a sixty-four-year-old woman who was hired as a French Instructor by Defendant in 2000, when she was fifty years old.  (Am. Compl. ¶¶ 1-2, 24.)  She has a master's degree and a Ph.D in French literature from New York University and has been an educator since 1977.  (Id. ¶¶ 21-22.)  She has taught French at both the secondary school and college levels.  (Id. ¶ 23.)  In addition to teaching, Plaintiff was a prolific presenter at international and national conferences, reviewer of articles on medieval and early-modern poetry, and a reader for the Advanced Placement ("AP") French exam.  (Id. ¶ 26.)  In 2011, the School gave Plaintiff a $10,000.00 stipend so that she could spend the summer working and writing in France.  (Id. ¶ 27.)  Plaintiff was awarded this stipend based

1

on her merit and tenure with the School.  (Id.)  In addition to Plaintiff's academic activities at the School, she also "immersed herself" in the School's community by, for example, living on campus and serving for nine years as a dorm parent, coaching intramural sports, managing students in the dining room, performing weekend duties, and working shifts at the campus library. (Id. ¶ 28.)

From Plaintiff's hiring in 2000 until February 2012, she never received a negative performance review from the School, nor was she ever otherwise notified that her performance was deficient in any way.  (Id. ¶ 30.)  Instead, Plaintiff "was often praised for her leadership skills, her creativity in the classroom, her willingness to incorporate new technologies into her teaching, the passage rates of her students on the AP French exam, and her value to the community." (Id. ¶ 31.)  "For each academic year, until the 2014-2015 academic year, [Plaintiff's] yearly contract was renewed and she consistently received salary increases and many responsibilities on campus and within the Modern Language Department." (Id. ¶ 32.)

However, on February 24, 2012, when she was sixty-two years old, Plaintiff was notified by letter that she would be placed on probation for the upcoming academic year. (Id. ¶¶ 33-34, 38.)  Despite all of Plaintiff's activities on campus, Plaintiff was "castigated in her probation letter for refusing to take on non-teaching assignments within the community." (Id. ¶ 36.)  Plaintiff protested to the Headmaster of the School, David Dougherty, that the reasons for which she had been placed on probation were false, inaccurate, and biased, and she further complained that she felt singled out by Defendant on the basis of her sex and age. (Id. ¶¶ 35-37.)

On March 17, 2012, Plaintiff submitted a rebuttal letter to Headmaster Dougherty responding to each point raised in the probation letter.  (Id. ¶ 38.)  In her letter, Plaintiff stated that she felt targeted because of her sex and age and provided several examples showing why she

believed Defendant was discriminating against her:  (1) "for the 2011-2012 academic year, the AP French course that she had taught for years had been taken away from her and given to a younger, male teacher with less experience" who had not asked to teach the course; (2) Plaintiff "was the only member of the Modern Language Department [to have] been involuntarily removed from a course previously taught;" and (3) "the male Chinese teacher who has taught the AP Chinese course since its inception has never been removed from his course, despite the fact that there was a female Chinese teacher qualified to teach [it]."  (Id. ¶¶ 37-41, Ex. 1 at 2.) Nonetheless, Plaintiff accepted her new teaching assignments.  (Id. ¶ 42.)  As of July 7, 2012, Plaintiff was "one of the oldest" of the eight teachers in her department and the only one with a doctorate.  (Id., Ex. 1 at 1-2.)

Plaintiff also asserted in her letter that she had been wrongly criticized in the probation letter for teaching fewer students than other teachers in the Department, since she in fact taught more students than Blair Barnes, a younger, male teacher in the Department.  (Id. ¶ 43.)  She also complained in her letter that the Department held male and female faculty members to different standards.  (Id. ¶ 44.)  Finally, Plaintiff described an incident involving the Dean of the Faculty, Thomas Johnson, which had occurred several months before.  (Id. ¶ 45.)  She stated that Mr. Johnson, who was only thirty-three years old at the time, called Plaintiff into his office and asked her about her health and age; after Plaintiff responded that she was sixty-two years old, Mr. Johnson replied that she "looked good for her age."  (Id.)  Plaintiff complained to Headmaster Dougherty, both in person and in writing, that she felt humiliated and embarrassed by Mr. Johnson's questions and comment.  (Id. ¶ 46.)  The Headmaster took no action in response to Plaintiff's complaints about Mr. Johnson's comment.  (Id. ¶ 47.)

Headmaster Dougherty told Plaintiff that he would consider withdrawing her probation,

but on April 5, 2012 told Plaintiff that he would not rescind her probationary status for the 2012-2013 academic year.  (Id. ¶¶ 48-49, Ex. 1 at 2-3.)  Headmaster Dougherty also informed Plaintiff that "he did not see any discrimination in her situation."  (Id., Ex. 1 at 3.)  Because Plaintiff had been placed on probation, she was ineligible for a 3% raise when her contract was renewed for the 2012-2013 academic year.  (Id. ¶ 50.)

In June 2012, Headmaster Dougherty was replaced by Zachary Lehman, a forty-year-old man.  (Id. ¶ 51.)  On July 10, 2012, Plaintiff filed her first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she complained that Defendant's acts constituted sex and age discrimination.  (Id. ¶ 52.)  At some point after Plaintiff filed her Charge, but before August 12, 2012, Defendant "unilaterally imposed on [Plaintiff] additional teaching and extra-curricular responsibilities for the 2012-2013 school year," despite the fact that Plaintiff's contract required such additional responsibilities to be mutually agreed upon.  (Id., Ex. 2 at 2.)  Defendant "met [its] contractual obligations with regard to other faculty members who [did] not file[] [C]harges of [D]iscrimination."  (Id.)

On July 28, 2012, Plaintiff received an email from Headmaster Lehman, in which he noted that although Plaintiff "already had a contract for the 2012-2013 school year, her employment was at-will," and that if she "did not respond to [the] email by 5:00 pm on July 31, 2012, she would be considered to have abandoned her employment and would potentially be in breach of her contract."  (Id. ¶¶ 53-54.)  Headmaster Lehman also stated in the email that the School would waive its breach of contract claim only if Plaintiff withdrew her EEOC claims.  (Id. ¶ 56.)  Headmaster Lehman did not remind any other School employees that their respective employments were at-will, and no other employee was threatened with a breach of contract claim.  (Id. ¶ 57.)  On August 8, 2012, Plaintiff filed an amended second Charge of

Discrimination with the EEOC in which she complained that Defendant "was retaliating against and bullying her for complaining of age and sex discrimination." (Id. ¶ 58.)

Plaintiff returned to the School for the 2012-2013 academic year and was taken off probation in December 2012. (Id. ¶ 60.) During this school year, Plaintiff "was never informed that her behavior or conduct did not meet the [S]chool's expectations or requirements." (Id. ¶ 61.)

On March 22, 2013, when Plaintiff was sixty-three years old, Headmaster Lehman offered Plaintiff an early retirement package. (Id. ¶ 62.) Headmaster Lehman informed Plaintiff that he wanted her to retire because he had recently hired the wife of a current teacher, who was thirty-eight years old, and because he wanted to hire an additional language teacher, a man in his late twenties. (Id. ¶ 63.) Headmaster Lehman further explained to Plaintiff that he could not hire the younger male teacher if she remained with the School in accordance with her 2013-2014 contract, which had been renewed in January 2013. (Id.) Headmaster Lehman also told Plaintiff "that these two younger teachers represented the 'future of the school' and that [Plaintiff] was 'in the way.'" (Id. ¶ 64.) Plaintiff declined the early retirement package, and notified Defendant "that she intended to return for the 2013-2014 academic year per her contract." (Id. ¶ 65.) Plaintiff also informed Headmaster Lehman, in person and in writing, "that she felt pressured and bullied with respect to the early retirement package and Headmaster Lehman's statements that [she] . . . was 'in the way' and [was] not the 'future of the school.'" (Id. ¶ 66.)

On April 4, 2013, Defendant notified Plaintiff that its administrative and departmental personnel no longer wished to communicate with her directly and instructed Plaintiff that all communications must take place through the School's Human Resources Department. (Id. ¶ 67.) No other employee of the School had ever received such a directive. (Id. ¶ 68.) On April 26,

5

2013, Plaintiff filed a third Charge of Discrimination with the EEOC.  (Id. ¶ 69.)  On January 22, 2014, Defendant informed Plaintiff that it was not renewing her employment contract for the 2014-2015 academic year.  (Id. ¶ 71.)  At that time, Plaintiff was sixty-four years old and had been employed by Defendant for fourteen years.  (Id. ¶ 72.)

Between March 17 and March 24, 2014, the EEOC issued Notices of Right to Sue for each of Plaintiff's three EEOC Charges that she had filed before she was notified that her contract would not be renewed.  (Id., Ex. 4-6.)  Plaintiff filed a Charge of Discrimination with the EEOC in connection with the non-renewal of her contract on June 19, 2014, after she commenced this action.  (See Pl.'s Mem. at 16 n.3, Ex. E.)

Count I of the Amended Complaint asserts claims that Plaintiff was subjected to sex discrimination, retaliation, and harassment in violation of Title VII.  Count II asserts claims that Plaintiff was subjected to age discrimination, retaliation, and harassment in violation of the ADEA.  Count III asserts claims that Plaintiff was subjected to sex and age discrimination, retaliation, and harassment in violation of the PHRA.  Defendant seeks dismissal of all claims asserted in Counts I, II, and III.

## II.   LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff."  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen.

Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as we are "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

Defendant argues that Plaintiff's claims regarding the non-renewal of her employment contract for the 2014-2015 academic year should be dismissed because she has not exhausted her administrative remedies as to these claims.  Defendant also argues that the Amended Complaint should be dismissed because it fails to state the essential elements of a discrimination, retaliation, or hostile work environment claim in violation of Title VII, the ADEA, or the PHRA.

A.     Exhaustion

Before commencing a Title VII, ADEA, or PHRA action in federal court, a plaintiff must exhaust her administrative remedies by filing a timely Charge of Discrimination with the EEOC[1] and receiving a right-to-sue letter from the EEOC after it investigates the Charge.  29 U.S.C. § 626(d)(1); Barzanty v. Verizon Pa., Inc., 361 F. App'x 411, 413 (3d Cir. 2010) (citing 42 U.S.C. §§ 2000e-5(b), (e)(1), and (f)(1))); Burgh v. Borough Council, 251 F.3d 465, 469-70 (3d Cir. 2001) (Title VII and PHRA); Watson v. Bd. of Dirs., Civ. A. No. 05-5760, 2006 WL 2506359, at *2 (E.D. Pa. Aug. 29, 2006) ("To properly file a civil action in district court pursuant to the ADEA . . . [p]laintiffs generally must exhaust their administrative remedies and receive a right-to-sue letter from the administrative agency that investigated the complaint." (citing Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56 (3d Cir. 1985); and Hornsby v. United States Postal Serv., 787 F.2d 87, 90 (3d Cir. 1986))).   The exhaustion requirement both encourages the settlement of "disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court," Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996), and puts the employer "on notice of the claims that are likely to be filed against it."  Barzanty, 361 F. App'x at 414 (citing 42 U.S.C. §§ 2000e-5(b), (e)(1)).

 "'[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the [C]harge of [D]iscrimination.'"  Webb v. City of Philadelphia, 562 F.3d 256, 263 (3d Cir. 2009) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  This "includ[es] new

---

[1] For a plaintiff to exhaust her administrative remedies, she must file an administrative charge with the EEOC within 180 or 300 days "'after the alleged unlawful employment practice occurred.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)); see also Ruehl v. Viacom, Inc., 500 F.3d 375, 382 n.9 (3d Cir. 2007) (quoting 29 U.S.C. § 626(d)).

acts which occurred during the pendency of proceedings before the Commission." <u>Ostapowicz</u>, 541 F.2d at 399 (citation omitted). While we interpret "the 'preliminary requirements for a Title VII action . . . in a nontechnical fashion,'" we must be careful not to permit the plaintiff "'to bypass the administrative process.'" <u>Webb</u>, 562 F.3d at 262-63 (quoting <u>Ostapowicz</u>, 541 F.2d at 398). Accordingly, discrete discriminatory acts, such as termination, must be timely exhausted through the EEOC process.[2] <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113-14 (2002). Thus, a plaintiff who has filed a Charge of Discrimination with the EEOC must file a new Charge when discrete acts of discrimination that are not within the scope of the prior Charge occur after the filing of the earlier Charge. <u>See</u> <u>Green v. Postmaster Gen.</u>, 437 F. App'x 174, 178 (3d Cir. 2011).

Plaintiff's first three EEOC Charges assert that she was discriminated against on the basis of her sex and age in connection with the following: (1) her removal from her AP French course (Am. Compl., Ex. 1 at 2); (2) her placement on probation for the 2012-2013 academic year (<u>id.</u>); (3) the School "unilaterally imposed on [her] additional teaching and extra-curricular responsibilities for the 2012-2013 school year" despite contractual language stating that "any teaching and extra-curricular responsibilities would be mutually agreed upon" (<u>id.</u>, Ex. 2 at 2); (4) the email from Headmaster Lehman stating that Plaintiff needed to confirm that she would be returning for the next school year (<u>id.</u> at 2-3); and (5) Defendant offering her an early retirement package (<u>id.</u>, Ex. 3 at 2). These Charges did not address the non-renewal of Plaintiff's employment contract, which occurred almost nine months after she filed her third EEOC

---

[2] The Third Circuit has stated that the following are discrete acts: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 127 (3d Cir. 2006) (citing <u>Morgan</u>, 536 U.S. at 114).

Charge.[3]  (Id. ¶¶ 69, 71.)  Defendant argues that each separate discriminatory or retaliatory action alleged in the Amended Complaint, such as the non-renewal of Plaintiff's employment contract, constitutes a discrete act which Plaintiff must exhaust prior to adjudication by this Court.

Plaintiff filed EEOC Charges on July 10, 2012; August 8, 2012; and April 26, 2013, and she received right-to-sue letters based on these Charges on March 17, 2014 and March 24, 2014. (Id. ¶¶ 52, 58, 69, Ex. 4-6.)  Defendant informed Plaintiff that her employment contract for the 2014-2015 academic year would not be renewed on January 22, 2014.  (Id. ¶ 71).  Thus, Plaintiff was informed that her contract would not be renewed during the pendency of her first three EEOC Charges.  Moreover, in her third Charge, Plaintiff stated that, after she filed her first two EEOC Charges, "Mr. Lehman informed [her] that [Defendant] was planning on hiring a new employee and wanted to terminate [her] employment."  (Id., Ex. 3 at 2.)  Plaintiff thus specifically asserted in her third EEOC Charge that Defendant would terminate her. Consequently, even though Plaintiff did not file an additional EEOC Charge based on the non-renewal of her contract for the 2014-2015 academic year prior to commencing this action, the non-renewal of her contract was fairly within the scope of the EEOC's investigation of the sex and age discrimination, retaliation, and hostile work environment claims Plaintiff alleged in her third EEOC Charge.  We therefore conclude that Plaintiff has exhausted her administrative remedies with respect to her claims involving the non-renewal of her employment contract for the 2014-2015 academic year because those claims are within the scope of her third EEOC Charge.  See Green, 437 F. App'x at 178 (holding that "a complainant need not file a new EEO[C] complaint as to 'new acts that occur during the pendency of the case which are fairly

---

[3] On June 19, 2014, Plaintiff filed a fourth EEOC Charge of Discrimination, asserting that she was discriminated and retaliated against on the basis of her sex and age as evidenced by Defendant not renewing her employment contract for the 2014-2015 academic year.  (Pl.'s Mem. at 16 n.3, Ex. E.)

within the scope of an [EEOC] complaint or the investigation growing out of that complaint.'"
(quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984))).   The Motion to Dismiss is,
therefore, denied as to Defendant's argument that Plaintiff failed to exhaust her claims arising
from the non-renewal of her employment contract for the 2014-2015 academic year.

      B.     Sex and Age Discrimination Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any
individual, or otherwise to discriminate against any individual with respect to his compensation,
terms, conditions, or privileges of employment, because of such individual's race, color, religion,
sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  The ADEA makes it unlawful for an
employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate
against any individual with respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's age[.]"  29 U.S.C. § 623(a)(1).  The PHRA provides
that it is "an unlawful discriminatory practice . . . [f]or any employer because of . . . race, color,
religious creed, . . . age, [or] sex, . . . to refuse to hire or employ or . . . discharge from
employment such individual . . . or to otherwise discriminate against such individual . . . with
respect to compensation, hire, tenure, terms, conditions or privileges of employment . . . ."  43
Pa. Stat. Ann. § 955(a).  The standards for proving sex and age discrimination claims under the
PHRA are identical to those under Title VII and the ADEA.  See Huston v. Procter & Gamble
Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) ("'The proper analysis under Title VII
and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed
the protections of the two acts interchangeably.'" (quoting Weston v. Pennsylvania, 251 F.3d
420, 426 n.3 (3d Cir. 2001))); Homel v. Centennial Sch. Dist., 836 F. Supp. 2d 304, 318 (E.D.
Pa. 2011) ("The PHRA's age discrimination protections are identical to the ADEA's." (citing

Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005))).  Accordingly, we analyze Plaintiff's Title VII, ADEA, and PHRA claims together.

If a complaint does not allege facts that would constitute direct evidence of sex or age discrimination, the plaintiff's discrimination claims are analyzed pursuant to the burden shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). McDonnell Douglas, 411 U.S. at 802-03 (describing the burden shifting framework to be utilized in Title VII cases); see also Kautz v. Met-Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005) (stating that the McDonnell Douglas burden shifting framework is used to analyze ADEA claims where there is no direct evidence of discrimination).  Plaintiff does not assert that the Amended Complaint alleges direct evidence of discrimination.  Accordingly, we analyze Defendant's argument that the Amended Complaint fails to state plausible claims of sex and age discrimination in violation of Title VII, the ADEA, and the PHRA solely under the McDonnell Douglas burden shifting framework.  Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802; see also Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).  If the plaintiff does so, the burden then shifts to her employer to "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action taken against her.  Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802).  If the employer meets this burden, the plaintiff "must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action."  Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); and McDonnell Douglas, 411 U.S. at 804).

Under McDonnell Douglas, a complaint asserting a prima facie case of employment

discrimination in violation of Title VII, the ADEA, or the PHRA must allege facts that, if true, would establish the following elements:  "(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position [she held]; (3) the plaintiff suffered an adverse employment action . . . ; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination."[4]  Greene v. Virgin Islands Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014) (citing Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013); and Makky v. Chertoff, 541 F.3d 205, 204 (3d Cir. 2008)); see also McDonnell Douglas, 411 U.S. at 802.  "The 'central focus' of the *prima facie* case 'is always whether the employer is treating some people less favorably than others because of their [protected class].'"  Sarullo, 352 F.3d at 798 (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)).

Defendant argues that we should dismiss Plaintiff's sex and age discrimination claims because the Amended Complaint fails to plausibly allege:  (1) she is presently qualified to perform her job; (2) an adverse employment action in any claim properly before the Court; and (3) facts that would give rise to an inference of intentional discrimination.

1.      Plaintiff's qualifications to perform her job

Defendant argues that the Amended Complaint fails to state a claim of sex or age discrimination in violation of Title VII, the ADEA, or the PHRA because, while the Amended Complaint makes numerous allegations about Plaintiff's training and experience, it does not plausibly allege that she is presently qualified for a faculty position at the School since she is

---

[4] The standard for ADEA claims is identical to that for Title VII claims, except that a plaintiff can only satisfy the fourth element of a prima facie case under the ADEA by showing that her employer replaced her with someone "sufficiently younger to support an inference of discriminatory animus."  Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009) (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)).

unwilling to perform her job.  The Amended Complaint alleges that Plaintiff has a master's degree and a Ph.D in French literature and "has been an educator her entire [adult life]."  (Am. Compl. ¶ 21.)  She has over thirty-five "years of experience in secondary and college-level French language instruction encompassing all age groups from sixth grade through college . . . ." (Id. ¶ 23.)  In addition to her teaching duties, Plaintiff has presented at international and national conferences, reviewed articles on medieval and early-modern poetry, and was a reader for the AP French exam.   (Id. ¶ 26.)   Moreover, the Amended Complaint contains no allegations that Plaintiff is presently unwilling to perform any of the duties of her job.  Indeed, the Amended Complaint alleges that Plaintiff even performed duties that were imposed on her in violation of her contract.  (See id., Ex. 2 at 2.)  We conclude that the Amended Complaint plausibly alleges that Plaintiff is qualified to be a faculty member in the School's Modern Languages Department. See Beaubrun v. Inter Cultural Family, Civ. A. No. 05-6688, 2006 WL 1997371, at *6 (E.D. Pa. July 13, 2006) (noting that complaint plausibly alleged that plaintiff was qualified to perform her job because it alleged that she "'was qualified for all of the duties that [the employer] assigned to her' and that 'she performed her duties in a professional and efficient manner'").  We further conclude, accordingly, that the Amended Complaint plausibly alleges the second element of a prima facie case of sex and age discrimination in violation of Title VII, the ADEA, and the PHRA.

## 2.    Adverse employment action

Defendant argues that Plaintiff's discrimination claims should be dismissed because the Amended Complaint fails to plausibly allege that Plaintiff suffered an adverse employment action.  The United States Court of Appeals for the Third Circuit has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible

enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)); see also 42 U.S.C. § 2000e-2(a)(1). "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non." Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999). Thus, "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." Id. (citation omitted).

The Third Circuit has also "indicated that 'a discrimination analysis must concentrate not on individual incidents, but on the overall scenario,'" and that adverse employment actions should be considered in aggregate. Shaner v. Synthes, 204 F.3d 494, 503 n.9 (3d Cir. 2000) (discussing discrimination claim under the ADA) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997)); see also Harry v. City of Philadelphia, Civ. A. No. 03-661, 2004 WL 1387319, at *5 (E.D. Pa. June 18, 2004) (stating, with respect to race discrimination claims under Title VII and the PHRA, that the court would "consider all of the actions of which plaintiff complains to determine if, when considered all together, there has been adverse employment action"). Consequently, while we discuss each employment action alleged in the Amended Complaint individually, "we must determine whether the [allegations of fact are] sufficient based on the whole picture." Woodson, 109 F.3d at 921 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990)).

The Amended Complaint alleges that Plaintiff was notified on January 22, 2014 that her contract would not be renewed for the 2014-2015 academic year. (Am. Compl. ¶ 71.) We conclude that the non-renewal of Plaintiff's employment contract for the 2014-2015 academic

15

year constitutes an adverse employment action.  See Greer v. Mondelez Global, Inc., -- F. App'x --, 2014 WL 5351829, at *2 (3d Cir. Oct. 22, 2014) (stating that "[a]n adverse employment action can generally be demonstrated by a hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 749 (1998))); see also Kahan v. Slippery Rock Univ. of Pa., -- F. Supp. 3d --, 2014 WL 4792170, at *13 (W.D. Pa. Sept. 24, 2014) (concluding that the non-renewal of a one-year teaching contract was an adverse employment action).

The Amended Complaint also alleges that on February 24, 2012, Plaintiff was notified that she would be placed on probation for the 2012-2013 academic year.  (Am. Compl. ¶ 33.) The Amended Complaint further alleges that Plaintiff's placement on probation made her ineligible for a 3% raise for that year that had been allocated for all faculty members.  (Id. ¶ 50, Ex. 1 at 2.)  We conclude that Plaintiff's placement on probation for the 2012-2013 academic year constitutes an adverse employment action because her ineligibility for a 3% raise altered her compensation and because records of her probation may cause, and may have caused, direct harm to her future employment opportunities.  See Durham, 166 F.3d at 153 (stating that "[i]f an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found" (citation omitted)).

The Amended Complaint further alleges that Plaintiff's AP French course was taken away from her and assigned to another teacher.  (Am. Compl. ¶ 41.)  A teacher's "discontent with course assignments is not an adverse employment action."  Boise v. New York Univ., Civ. A. No. 00-7844, 2003 WL 22390792, at *5 (S.D.N.Y. Oct. 21, 2003), aff'd sub nom. Boise v.

Boufford, 121 F. App'x 890 (2d Cir. 2005) (citation omitted); see also Cussler v. Univ. of Md., 430 F. Supp. 602, 608 (D. Md. 1977) (stating that "[n]o faculty member has a vested right in any course or committee assignment").  Furthermore, the Amended Complaint does not allege any facts indicating that Plaintiff's removal from her AP French course resulted in a materially adverse change in her working conditions.  See Berridge v. Nalco Co., Civ. A. No. 10-3219, 2014 WL 340596, at *7-9 (D.N.J. Jan. 30, 2014) (concluding that plaintiff's removal from a work account and placement on another account did not constitute an adverse employment action because the plaintiff suffered no diminution in his title, salary, benefits, or employment status).  We conclude, accordingly, that Plaintiff's removal from her AP French course does not on its own constitute an adverse employment action.

We further conclude, accordingly, that the Amended Complaint plausibly alleges adverse employment action because the non-renewal of Plaintiff's one-year teaching contract, see Kahan, 2014 WL 4792170, at *13, and her ineligibility for a 3% raise as a result of being placed on probation each constitutes an adverse employment action.  See Durham, 166 F.3d at 153. Moreover, while Plaintiff's removal from her AP French course does not individually constitute an adverse employment action, when viewed alongside the non-renewal of her contract and her placement on probation, it provides further support for the conclusion that the Amended Complaint plausibly alleges adverse employment action.  We further conclude, accordingly, that the Amended Complaint plausibly alleges the third element of a prima facie case of sex and age discrimination in violation of Title VII, the ADEA, and the PHRA.

3.    Inference of discrimination

Defendant argues that Plaintiff's discrimination claims should be dismissed because the Amended Complaint does not plausibly allege circumstances that could give rise to an inference

of discrimination.  The United States Court of Appeals for the Third Circuit has stated that to plausibly allege the fourth element of a <u>McDonnell Douglas</u> claim, the complaint may either:  (1) allege that "similarly situated employees who . . . were not members of the same protected class . . . were treated more favorably under similar circumstances" or (2) allege facts that "otherwise show[] a causal nexus between [the employee's] membership in a protected class and the adverse employment action."  <u>Greene</u>, 557 F. App'x at 195 (citing <u>Sarullo</u>, 352 F.3d at 797 n.7).  The Third Circuit has explained that "[w]hile 'similarly situated' does not mean identically situated, the plaintiff [and the comparators] must nevertheless be similar 'in all relevant respects.'" <u>Opsatnik v. Norfolk S. Corp.</u>, 335 F. App'x 220, 222-23 (3d Cir. 2009) (quoting <u>Holifeld v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997)); <u>see also</u> <u>Bennun v. Rutgers State Univ.</u>, 941 F.2d 154, 178 (3d Cir. 1991) (stating that two biochemistry professors in the same department were "similarly situated" despite the fact that only one of the professors was rated outstanding in two categories of a performance review, because requiring more similar performance ratings "would change 'similarly situated' to 'identically situated'").

We consider the following factors in determining whether employees are similarly situated in the context of workplace discipline and personnel actions:  (1) whether the employees had the same supervisor; (2) whether the employees were "'subject to the same standards[;]'" and (3) whether the employees engaged in similar conduct.  <u>McCullers v. Napolitano</u>, 427 F. App'x 190, 195 (3d Cir. 2011) (quoting <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617-18 (7th Cir. 2000)).  We also "take[] into account . . . the employees' job responsibilities."  <u>Wilcher v. Postmaster Gen.</u>, 441 F. App'x 879, 882 (3d Cir. 2011) (citations omitted).  Moreover, we may consider Defendant's actions in aggregate without finding that each action individually supports an inference of discrimination.  <u>See</u> <u>Dantzler-Hoggard v. Graystone Acad. Charter Sch.</u>,

18

Civ. A. No. 12-0536, 2012 WL 2054779, at *8 (E.D. Pa. June 6, 2012) ("While any one of these allegations, taken alone, may not be sufficient to support an inference of discrimination, when taken together, and viewed in the light most favorable to [plaintiff], they are sufficient to support such an inference at this motion-to-dismiss stage."); see also Shaner, 204 F.3d at 503 n.9 (stating that "'a discrimination analysis must concentrate not on individual incidents, but on the overall scenario'" (quoting Woodson, 109 F.3d at 921)).

The Amended Complaint asserts that Plaintiff is a woman over the age of forty; she is therefore a member of protected classes. See 42 U.S.C. § 2000e-2(a)(1) (Title VII); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (stating that the protected class for the purposes of the ADEA is limited to individuals who are forty years old or older). Accordingly, we consider whether the Amended Complaint plausibly alleges that Plaintiff was treated less favorably than similarly situated employees who were not women or were not forty years old or older.

We first consider whether the Amended Complaint plausibly alleges that Plaintiff's contract was not renewed under circumstances that give rise to an inference of sex or age discrimination. The Amended Complaint alleges that on March 22, 2013, Headmaster Lehman told Plaintiff that he had recently hired a younger female employee and wanted to hire an additional language teacher who was a young male in his late twenties but could not do so if Plaintiff remained with the School as provided in her 2013-2014 contract. (Am. Compl. ¶ 63.) Accordingly, Headmaster Lehman "wanted to terminate [Plaintiff's] employment." (Id., Ex. 3 at 2.) The Amended Complaint further alleges that Defendant notified Plaintiff on January 22, 2014 that it would not be renewing her contract for the 2014-2015 academic year. (Id. ¶ 71.) Viewing these allegations in the light most favorable to Plaintiff, we conclude that they do not

support an inference that Plaintiff was replaced by either the younger female or the younger male teacher because:  (1) Plaintiff was not informed that her contract would not be renewed for the 2014-2015 academic year until eight months after her conversation with Headmaster Lehman (id. ¶¶ 63, 71); (2) Headmaster Lehman stated that he could not hire the younger male teacher if Plaintiff continued working at the School in accordance with her 2013-2014 contract, not her 2014-2015 contract (id. ¶ 63); and (3) the Amended Complaint does not allege that the School ever hired the younger male teacher.  We conclude, accordingly, that the Amended Complaint fails to plausibly allege facts that support an inference that Defendant did not renew Plaintiff's employment contract for the 2014-2015 academic year as a result of sex or age discrimination.

We must also consider whether the Amended Complaint plausibly alleges that Plaintiff was placed on probation under circumstances that give rise to an inference of sex or age discrimination.  The Amended Complaint alleges that Defendant notified Plaintiff that she was being placed on probation, in part, because she taught fewer students than other teachers in the Modern Language Department.  (Id. ¶ 43.)  There were eight members of that Department, all of whom were supervised by Dr. Lagor, the head of the Department.  (Id. ¶ 42, Ex. 1 at 2.)  The Amended Complaint further alleges that Plaintiff actually taught more students than Blair Barnes, a younger, male teacher in the Department.  (Id., Ex. 1 at 2.)  Drawing all inferences in Plaintiff's favor, we find that Plaintiff had similar job responsibilities as other members of the Department, as they all taught modern languages and had the same supervisor, and that Barnes -- who was not a member of either of Plaintiff's protected classes -- engaged in similar conduct as Plaintiff by not teaching a sufficient number of students, but was not placed on probation despite teaching even fewer students than Plaintiff.  See McCullers, 427 F. App'x at 195 (stating that one relevant factor in determining whether employees are similarly situated is whether they

"'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'" (quoting Radue, 219 F.3d at 617-18)); see also Wilcher, 441 F. App'x at 882 (considering "the nature of [any] misconduct engaged in" when determining whether two employees were similarly situated (citations omitted)).   We further find that the Amended Complaint alleges that Plaintiff was treated differently than a similarly situated individual who was not a member of either of her protected classes.   We conclude, accordingly, that the Amended Complaint plausibly alleges facts that support an inference that Plaintiff was placed on probation as a result of sex and age discrimination.   We therefore further conclude that the Amended Complaint plausibly alleges the fourth element of a prima facie case of sex and discrimination in violation of Title VII, the ADEA, and the PHRA in accordance with McDonnell Douglas.

Because the Amended Complaint alleges facts that plausibly support all four elements of a prima facie case of sex and age discrimination under McDonnell Douglas with respect to Plaintiff's probation, and because we may consider Defendant's actions in aggregate without finding that each action individually supports an inference of discrimination or constitutes an adverse employment action, we conclude that the Amended Complaint states plausible claims of sex and age discrimination in violation of Title VII, the ADEA, and the PHRA with respect to all of the adverse employment actions alleged therein, and we deny Defendant's Motion as to Plaintiff's sex and age discrimination claims in Counts I, II, and III.   See Dantzler-Hoggard, 2012 WL 2054779, at *8 ("While any one of these allegations, taken alone, may not be sufficient to support an inference of discrimination, when taken together, and viewed in the light most favorable to [plaintiff], they are sufficient to support such an inference at this motion-to-dismiss stage."); Harry, 2004 WL 1387319, at *5 (stating, with respect to race discrimination claims

under Title VII and the PHRA, that the Third Circuit has indicated that courts should "consider all of the actions of which plaintiff complains to determine if, when considered all together, there has been adverse employment action"); see also Shaner, 204 F.3d at 503 n.9 (stating that "'a discrimination analysis must concentrate not on individual incidents, but on the overall scenario'" (quoting Woodson, 109 F.3d at 921)).

      C.    Retaliation

Title VII's anti-retaliation provision forbids employer actions that "discriminate against" an employee because she has "opposed" a practice that Title VII forbids or "has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a). The anti-retaliation provisions in the ADEA are "nearly identical" to those in Title VII, and the anti-retaliation provisions in the PHRA are "substantially similar" to those in Title VII. See 29 U.S.C. § 623(d); 43 Pa. Stat. Ann. § 955(d); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (stating that because the anti-retaliation provisions of Title VII and the ADEA are "nearly identical, . . . precedent interpreting any one of these statutes is equally relevant to interpretation of the other[]"); see also Fasold, 409 F.3d at 188 (applying same legal standard to retaliation claims brought pursuant to the ADEA and the PHRA (citing Fogelman, 283 F.3d at 567-68)).

"In the absence of direct evidence of retaliation, retaliation claims . . . typically proceed under the McDonnell Douglas framework." Fasold, 409 F.3d at 188 (citations omitted). In order to state a prima facie case of retaliation under this framework, the complaint must allege that: (1) the plaintiff was engaged in protected activity; (2) "'the employer took an adverse employment action after or contemporaneous with the employee's protected activity;" and (3) there was a causal connection between the protected activity and the adverse action. Greer, 2014

WL 5351829, at *3 (quoting Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 286 (3d Cir. 2001)).  If the employee establishes a prima facie case of retaliation, the burden "'shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct and, if it does so, 'the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'"  Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)).

Defendant argues that we should dismiss Plaintiff's retaliation claims because the Amended Complaint fails to plausibly allege:  (1) any materially adverse employment actions, and (2) a causal relationship between any allegedly materially adverse employment action and Plaintiff's protected activity.

### 1.   Protected activity

To state the first element of a prima facie case of retaliation -- that the plaintiff engaged in protected activity -- a complaint need not allege that the plaintiff sent "a formal letter of complaint to an employer or the EEOC," but whatever form the complaint to the employer or the EEOC takes, it must specifically allege that discrimination has occurred.  Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (quoting Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)); see also Sumner, 899 F.2d at 209 (noting that, in addition to the filing of a formal Charge of Discrimination, the following actions also comprise protected activity: "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges" (citations omitted)).

Consequently, as an initial matter, we must identify Plaintiff's protected activity.  The

23

Amended Complaint alleges that, on March 17, 2012, Plaintiff sent a letter to Headmaster Dougherty challenging his decision to place her on probation for the upcoming academic year. (Am. Compl. ¶ 38.)  The letter included an assertion that Plaintiff "felt targeted because of her sex and age" and gave several examples that formed the basis for her belief that Defendant was discriminating against her.  (Id. ¶¶ 39-40.)  The letter also included a complaint that the standards for men and women were different in the School's Modern Language Department.  (Id. ¶ 44.) We conclude that Plaintiff's March 17, 2012 rebuttal letter constitutes protected activity because it specifically claimed discrimination based on Plaintiff's sex and age.  See Barber, 68 F.3d at 702.  The Amended Complaint also alleges that Plaintiff filed her first Charge of Discrimination with the EEOC, alleging sex and age discrimination, on July 10, 2012.  (Am. Compl. ¶ 52.) This, too, is protected activity.  See Barber, 68 F.3d at 702.

The Amended Complaint further alleges that on August 8, 2012, Plaintiff filed an amended second Charge of Discrimination and Retaliation with the EEOC (Am. Compl. ¶ 58), which constitutes protected activity.  See Barber, 68 F.3d at 702.  The Amended Complaint also alleges that, after Defendant offered Plaintiff a retirement package on March 22, 2013, Plaintiff informed Headmaster Lehman, in person and in writing, that she "felt pressured and bullied with regard to the early retirement package and Headmaster Lehman's statements that [Plaintiff], an older woman, was 'in the way' and [was] not the 'future of the school.'"  (Am. Compl. ¶ 66.) Viewing the allegations regarding Plaintiff's rejection of the retirement package in the light most favorable to her, we conclude that she complained to Headmaster Lehman that she had been discriminated against on the basis of her sex and/or age, and that her complaint constitutes protected activity.  See Killen v. Nw. Human Servs., Inc., Civ. A. No. 06-4100, 2007 WL 2684541, at *7 (E.D. Pa. Sept. 7, 2007) (stating that protected activity includes "'informal

protests of discriminatory employment practices, including making complaints to management" (quoting Barber, 68 F.3d at 702)).   We further conclude, accordingly, that the Amended Complaint plausibly alleges the first element of a prima facie case of retaliation in violation of Title VII, the ADEA, and the PHRA in accordance with McDonnell Douglas.

> ### 2.   Materially adverse employment action

The Supreme Court has held that the anti-retaliation provision of Title VII is "not limited to discriminatory actions that affect the terms and conditions of employment."   Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006) (citation omitted); see also Fogleman, 283 F.3d at 567 (stating that because the anti-retaliation provisions in the ADEA are "nearly identical" to those in Title VII and the anti-retaliation provisions in the PHRA are "substantially similar" to those in Title VII, "precedent interpreting any one of these statutes is equally relevant to interpretation of the other[]").   Indeed, unlike Title VII's substantive provision, the anti-retaliation provision's scope "extends beyond workplace-related or employment-related retaliatory acts and harm."   Burlington N., 548 U.S. at 67.   A plaintiff need only show that "a reasonable employee would have found the challenged action to be materially adverse," which means that it might have "'dissuaded a reasonable worker from making or supporting a charge of discrimination'" or complaining to the EEOC, the courts, or her employer.   Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).   "Whether an action is materially adverse 'often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'"   Hare v. Potter, 220 F. App'x 120, 128 (3d Cir. 2007) (quoting Burlington N., 548 U.S. at 69).   Furthermore, to determine whether there was materially adverse employment action, the employer's actions may be considered in aggregate.   See Brennan v. Norton, 350 F.3d

399, 422 n.17 (3d Cir. 2003) (stating that "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimis* if considered in isolation"); Riley v. Delaware River & Bay Auth., 661 F. Supp. 2d 456, 471 (D. Del. 2009) ("[T]he Third Circuit has held that when viewed together, otherwise immaterial acts can cumulatively allege a materially adverse action." (citing Brennan, 350 F.3d at 422 n.17)).

Defendant argues that the Amended Complaint fails to state a claim of retaliation in violation of Title VII, the ADEA, or the PHRA because the Amended Complaint does not plausibly allege a materially adverse employment action. Specifically, Defendant contends that none of the following incidents alleged in the Amended Complaint constitutes a materially adverse employment action: (1) Headmaster Lehman reminding Plaintiff by email that she was an at-will employee, directing her to respond to his email, and telling her that she would be deemed to have abandoned her employment or breached her contract if she did not respond; (2) Defendant offering Plaintiff a retirement package; (3) Defendant directing Plaintiff to communicate with it solely through the School's Human Resources Department; and (4) Defendant's failure to investigate Plaintiff's complaints of discrimination and retaliation.[5]

We first consider whether the Amended Complaint plausibly alleges that the non-renewal of Plaintiff's contract constitutes a materially adverse employment action.[6] The Amended Complaint alleges that Plaintiff was notified on January 22, 2014 that her contract would not be renewed for the 2014-2015 academic year. (Am. Compl. ¶ 71.) We conclude that the non-

---

[5] The allegations that Defendant took away Plaintiff's AP French course and placed her on probation cannot constitute retaliation because these events occurred prior to Plaintiff's filing of Charges of Discrimination and Retaliation with the EEOC (Am. Compl. ¶¶ 52, 58, 69) and before she engaged in any other protected activity, such as her rebuttal letter to Headmaster Dougherty on March 17, 2012 (id. ¶ 38).

[6] Defendant did not include the non-renewal of Plaintiff's contract on its list of possible materially adverse employment actions.

renewal of Plaintiff's employment contract for the 2014-2015 academic year constitutes a materially adverse employment action.  Cf. Kahan, 2014 WL 4792170, at *13 (concluding that the non-renewal of a one-year teaching contract was an adverse employment action).

We next consider whether the Amended Complaint plausibly alleges that Headmaster Lehman's email constitutes a materially adverse employment action.  The Amended Complaint alleges that on July 28, 2012, Headmaster Lehman sent an email to Plaintiff in which he stated that although Plaintiff "already had a contract for the 2012-2013 school year, her employment was at-will" and that if she "did not respond to [the] email by 5:00 pm on July 31, 2012, she would be considered to have abandoned her employment and would potentially be in breach of her contract."  (Am. Compl. ¶¶ 53-54.)  The Amended Complaint further alleges that in this email, "Headmaster Lehman concluded that the [S]chool would waive its breach of contract claim against [Plaintiff] . . . only if she withdrew her state and federal claims of age and sex discrimination with prejudice."  (Id. ¶ 56.)  While this email appears to constitute a threat that Headmaster Lehman would fire Plaintiff if she did not withdraw her EEOC Charge of Discrimination, Defendant did not fire Plaintiff at that time, and her contract was renewed for the 2013-2014 academic year in January 2013, approximately five months after Headmaster Lehman made the threat.  (Id. ¶ 63.)  A termination threat might "'dissuade[] a reasonable worker from making or supporting a charge of discrimination'" or complaining to the EEOC, the courts, or her employer.  Burlington N., 548 U.S. at 68 (quoting Rochon, 438 F.3d at 1219).  However, when an employer threatens to take an action but does not in fact take that action, the threat does not constitute a materially adverse employment action for the purposes of retaliation claims.  See Hellman v. Weisberg, 360 F. App'x 776, 779 (9th Cir. 2009) (holding that employer threatening plaintiff with termination and criminal prosecution did not constitute a materially adverse

employment action since plaintiff was not fired or prosecuted); Ali v. District of Columbia, 810 F. Supp. 2d 78, 86 (D.D.C. 2011) ("[M]ere threats . . . do not give rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm" (alteration in original) (quotation omitted)); Ilori v. Carnegie Mellon Univ., 742 F. Supp. 2d 734, 760 (W.D. Pa. 2010) (finding that threat to fire plaintiff that was never carried out did not rise to level of a materially adverse employment action because it "had no demonstrable impact on plaintiff's employment" (citations omitted)). We conclude, accordingly, that the threatening email does not constitute a materially adverse employment action for the purposes of Plaintiff's retaliation claims.

We also consider whether the Amended Complaint plausibly alleges that the early retirement offer constitutes a materially adverse employment action. The Amended Complaint alleges that Defendant offered Plaintiff an early retirement package so that it could hire two younger teachers, and that Plaintiff "felt pressured and bullied." (Am. Compl. ¶¶ 62-66.) However, the Amended Complaint does not allege that the School threatened Plaintiff or forced her to accept the retirement package. We conclude, accordingly, that the early retirement offer does not, in itself, constitute a materially adverse employment action. See Gray v. York Newspapers, Inc., 957 F.2d 1070, 1085 (3d Cir. 1992) (finding, in ADEA case, that there was no inference of age discrimination when defendant offered plaintiff retirement package but plaintiff was not threatened with adverse employment action if she chose not to accept the offer); cf. Aufdencamp v. Irene Stacy Cmty. Mental Health Ctr., 234 F. Supp. 2d 515, 517 (W.D. Pa. 2002) (stating that employee had suffered adverse employment action in the form of a forced retirement, in lieu of being fired).

We additionally consider whether the Amended Complaint plausibly alleges that

Defendant's directive that Plaintiff communicate with it solely through its Human Resources Department constitutes a materially adverse employment action.  The Amended Complaint alleges that Defendant directed Plaintiff to communicate with Defendant solely through its Human Resources Department, rather than through the School's administrative and departmental personnel.  (Am. Compl. ¶ 67.)  The Amended Complaint further alleges that no other School employee had been similarly directed.  (Id. ¶ 68.)  While Plaintiff argues that this directive constituted a material change in her ability to perform her job, the Amended Complaint does not allege the manner in which this directive affected Plaintiff.  We therefore conclude that, viewed in isolation, this directive does not constitute a materially adverse employment action.  Indeed, "'[p]etty slights, minor annoyances, and simple lack of good manners' are normally not sufficient to deter a reasonable person" from making complaints about discrimination, and thus do not constitute materially adverse employment actions.  Hare, 220 F. App'x at 128 (quoting Burlington N., 548 U.S. at 68).

We further consider whether the Amended Complaint plausibly alleges that Defendant's failure to investigate Plaintiff's discrimination claims constitutes a materially adverse employment action.  (See Am. Compl. ¶ 59.)  We conclude that this alleged inaction does not, by itself, constitute a materially adverse employment action, since "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010); see also Scott v. Sunoco Logistics Partners, 918 F. Supp. 2d 344, 356 (E.D. Pa. 2013) (noting that "a total failure to investigate is not an adverse employment action").

We therefore conclude that the Amended Complaint plausibly alleges a materially

adverse employment action because the non-renewal of a one-year teaching contract is an adverse employment action.  See Kahan, 2014 WL 4792170, at *13.  Moreover, while the other allegations in the Amended Complaint, discussed supra, do not individually state materially adverse employment actions, when viewed collectively they provide further support for the conclusion that the Amended Complaint plausibly alleges materially adverse employment action. We further conclude, accordingly, that the Amended Complaint plausibly alleges the second element of a prima facie case of retaliation in violation of Title VII, the ADEA, and the PHRA in accordance with McDonnell Douglas.

        3.    Causal connection between the alleged materially adverse actions and Plaintiff's protected activity

The Third Circuit has explained that, to plausibly allege a causal link between a materially adverse employment action and the plaintiff's protected activity, the complaint must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing . . . ."  Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citing Krouse, 126 F.3d at 503-04; and Woodson, 109 F.3d at 920-21).  Defendant argues that the Amended Complaint fails to state a claim of retaliation in violation of Title VII, the ADEA, or the PHRA because the Amended Complaint fails to plausibly allege a causal link between the alleged protected activity and the alleged materially adverse employment actions.  As we discussed supra, Plaintiff engaged in protected activity by filing each of her EEOC Charges of Discrimination, challenging her probation in her March 17, 2012 letter to Headmaster Dougherty, and complaining to Headmaster Lehman about the offer of an early retirement package.

        a.    Temporal proximity

If a plaintiff relies on temporal proximity to establish a causal connection, "the timing of

the alleged retaliatory action must be unusually suggestive of retaliatory motive . . . ." Krouse, 126 F.3d at 503 (internal quotation omitted). Defendant argues that the Amended Complaint fails to plausibly allege that the timing between Plaintiff's protected activity and any materially adverse employment action is so "unusually suggestive" of retaliatory motive as to permit an inference of causation.

Plaintiff argues that the Amended Complaint plausibly alleges a causal connection between the first Charge of Discrimination she filed with the EEOC and the threatening email from Headmaster Lehman, which she received approximately eighteen days later. (See Am. Compl. ¶¶ 52-53.) However, such timing is not "unusually suggestive" of retaliatory motive.[7] See, e.g., Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive when three weeks had elapsed between protected activity and adverse employment action); see also Fischer v. Transue, Civ. A. No. 04-2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of twenty-two days was insufficient for the purpose of inferring causation); Killen, 2007 WL 2684541, at *8 (holding that temporal proximity of seventeen days was insufficient for the purpose of inferring causation).

Plaintiff also argues that the Amended Complaint plausibly alleges a causal connection between the Charges of Discrimination she filed with the EEOC and Defendant's failure to

---

[7] While the threatening email does not individually constitute a materially adverse employment action, we may consider these allegations of materially adverse employment action collectively in order to determine whether the Amended Complaint plausibly alleges causation. See Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 303 (3d Cir. 2007) (stating, with respect to pattern of antagonism, that "it matters not, of course, whether each piece of evidence . . . is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively" (citing Woodson, 109 F.3d at 921)); see also Riley, 661 F. Supp. 2d at 471 ("[T]he Third Circuit has held that when viewed together, otherwise immaterial acts can cumulatively allege a materially adverse action." (citing Brennan, 350 F.3d at 422 n.17)).

renew her employment contract for the 2014-2015 academic year.  The Amended Complaint alleges that Plaintiff was informed of the non-renewal of her contract on January 22, 2014, nearly eight months after she filed her third Charge of Discrimination with the EEOC.  (Am. Compl. ¶¶ 69-71.)  We conclude that this gap in time is not "unusually suggestive" of retaliatory motive.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (listing cases in which three and four months between protected activity and adverse employment action was insufficient to establish causal connection); Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) ("We find that the five-month time period . . . is, without additional evidence, insufficient to raise an inference of causation.").  Accordingly, we further conclude that the Amended Complaint does not plausibly allege "unusually suggestive" timing with respect to Plaintiff's termination because she was informed of the non-renewal of her contract on January 22, 2014, approximately eight months after she filed her third Charge of Discrimination with the EEOC. (See Am. Compl. ¶¶ 69, 71.)

Plaintiff additionally argues that the Amended Complaint plausibly alleges a causal connection between her complaints of discrimination and Defendant's instruction that she communicate with Defendant solely through the School's Human Resources Department.  The Amended Complaint alleges that Plaintiff was notified that she must communicate with Defendant solely through the School's Human Resources Department approximately thirteen days after the earliest date on which she could have sent her letter to and spoken with Headmaster Lehman regarding the School's offer of an early retirement package.[8]  (See id. ¶¶ 62-67.)  Thirteen days between protected activity and an adverse employment action may be

---

[8]  The Amended Complaint does not allege the date on which Plaintiff spoke to and submitted her letter to Headmaster Lehman.  (See Am. Compl. ¶ 66.)  However, the earliest this action could have occurred was March 22, 2013, the date on which Headmaster Lehman offered her the early retirement package.  (See id. ¶ 62.)

unusually suggestive of retaliatory motive.  Compare Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir. 2003) (holding that temporal proximity of ten days was sufficient to establish causation); and Burgess-Walls v. Brown, Civ. A. No. 11-275, 2011 WL 3702458, at *8 (E.D. Pa. Aug. 22, 2011) (determining that gap of twelve to forty-two days between plaintiff's complaint and her demotion was sufficient to establish a prima facie case of retaliation); and Taylor v. JFC Staffing Assocs., 690 F. Supp. 2d 357, 371 (M.D. Pa. 2009) (stating that gap of twelve days between plaintiff's protected activity and materially adverse action was "sufficiently 'unduly suggestive'" from which to infer causal connection), with Abdul-Latif v. Cnty. of Lancaster, 990 F. Supp. 2d 517, 531 (E.D. Pa. 2014) (noting that "six days is at the long end of what has been held to be unusually suggestive . . .").  Although we conclude that the Amended Complaint's allegation of temporal proximity in this instance -- no more than thirteen days and quite possibly less -- may be unusually suggestive of retaliatory motive, we further conclude that the Amended Complaint does not plausibly allege that this "unusually suggestive" timing establishes a causal connection between protected activity and a materially adverse employment action because Defendant's instruction that Plaintiff communicate with it solely through its Human Resources Department is not, on its own, a materially adverse employment action.  (See § III.C.2, supra.)

We therefore conclude that the Amended Complaint does not plausibly allege "unusually suggestive" timing that establishes a causal connection between any of Plaintiff's protected activities and any materially adverse employment actions she suffered.

b.    Pattern of antagonism

Even though the Amended Complaint does not allege facts that would plausibly establish a causal connection through unusually suggestive timing, a causal connection may also be

established if the Amended Complaint alleges a pattern of antagonism that, together with timing, permits an inference of causation. See Woodson, 109 F.3d at 920-21 (stating that absent unusually suggestive timing, "a plaintiff can establish a link between . . . her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period"); see also Thomas, 351 F.3d at 114 ("[W]here 'the temporal proximity is not so close as to be unduly suggestive,' we have recognized that 'timing plus other evidence may be an appropriate test . . . .'" (quoting Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003))).

Defendant argues that the Amended Complaint fails to plausibly allege facts that would establish a causal connection through timing and a pattern of antagonism because the Amended Complaint contains no allegations that Plaintiff experienced hostile treatment during any of the gaps in time between her protected activities and the alleged materially adverse employment actions. Plaintiff argues, however, that the Amended Complaint alleges that she was subjected to years of bullying and harassing conduct that constitute a pattern of antagonism. We conclude that the following actions alleged in the Amended Complaint, which took place after Plaintiff first complained about discrimination, plausibly allege a pattern of antagonism: (1) Headmaster Lehman's threatening email (Am. Compl. ¶¶ 53-54, 56); (2) Defendant offering Plaintiff a retirement package (id. ¶¶ 62-66); (3) Defendant requiring Plaintiff to communicate with Defendant solely through the School's Human Resources Department (id. ¶ 67); and (4) Defendant's decision not to renew Plaintiff's employment contract for the 2014-2015 academic year (id. ¶ 71). See Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302-05 (3d Cir. 2007) (finding that defendant's actions constituted pattern of antagonism, that established the required causal connection, during the nine-month period between plaintiff's protected activity and his eventual termination, when there was evidence that: (1) plaintiff's computer was vandalized; (2)

34

plaintiff was excluded from relevant meeting; (3) plaintiff's employee was reassigned over plaintiff's objections; and (4) manager gave plaintiff a "look of disgust" upon learning that plaintiff had engaged in protected activity); see also id. at 303 (stating, with respect to pattern of antagonism, that "it matters not, of course, whether each piece of evidence . . . is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively" (citing Woodson, 109 F.3d at 921)); Riley, 661 F. Supp. 2d at 471 ("[T]he Third Circuit has held that when viewed together, otherwise immaterial acts can cumulatively allege a materially adverse action." (citing Brennan, 351 F.3d at 422 n.17)).  As a result, we conclude that the Amended Complaint alleges facts that give rise to an inference of causation, and also conclude, accordingly, that the Amended Complaint alleges the third element of a prima facie case of retaliation in violation of Title VII, the ADEA, and the PHRA in accordance with McDonnell Douglas.  Because the Amended Complaint alleges facts that support all three elements of a prima facie case of retaliation under McDonnell Douglas, we further conclude that the Amended Complaint states facially plausible claims of retaliation in violation of Title VII, the ADEA, and the PHRA, and we deny Defendant's Motion as to Plaintiff's retaliation claims in Counts I, II, and III.

   D.  Hostile Work Environment

  Title VII prohibits sexual harassment that is sufficiently severe or pervasive to effectively alter the terms and conditions of employment.  See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Consequently, in order to establish that the employer is liable for a hostile work environment, the complaint must allege that the plaintiff's "work environment was so pervaded by discrimination that the terms and conditions of employment were altered."  Vance v. Ball State Univ., 133 S. Ct. 2434, 2441 (2013) (citing Harris v. Forklift Sys. Inc., 510 U.S. 17, 21

(1993)).  Specifically, to state a facially plausible hostile work environment claim under Title VII, the ADEA, or the PHRA, the complaint must allege that:   "'(1) the employee suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.'"[9]  Huston, 568 F.3d at 104 (quoting Weston, 251 F.3d at 426); see also id. at 104 n.2 ("'The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania Courts have construed the protections of the two acts interchangeably.'" (quoting Weston, 251 F.3d at 426 n.3)); Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home, Civ. A. No. 13-2463, 2014 WL 2921534, at *4 (E.D. Pa. June 27, 2014) ("The same criteria are utilized when assessing a hostile work environment claim based on age." (citation omitted)).  In determining whether harassment is sufficiently severe or pervasive to create a hostile work environment, we consider the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

---

[9] The Third Circuit has not "formally recognized a cause of action for hostile work environment under the ADEA.  See Lyles v. Philadelphia Gas Works, 151 F. App'x 169, 171 n.3 (3d Cir. 2005); see also Slater v. Susquehanna Cnty., 465 F. App'x 132, 138 (3d Cir. 2012) (assuming "without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim" (citations omitted)).  However, district courts within the Third Circuit have recognized a cause of action for hostile work environment based on the ADEA.  See Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home, Civ. A. No. 13-2463, 2014 WL 2921534, at *4 (E.D. Pa. June 27, 2014); Mauriello v. Sears Roebuck & Co., Civ. A. No. 13-1676, 2014 WL 67312, at *3 (D.N.J. Jan. 8, 2014) (citing Slater, 465 F. App'x 138); O'Malley v. Fairleigh Dickinson Univ., Civ. A. No. 10-6193, 2014 WL 67280, at *17 (D.N.J. Jan. 7, 2014) (citing Culler v. Sec'y of U.S. Veterans Affairs, 507 F. App'x 246, 249 n.3 (3d Cir. 2012); and Slater, 465 F. App'x at 138); but see Blozis v. Mellon Trust of Del. Nat'l Ass'n, 494 F. Supp. 2d 258, 272 (D. Del. 2007) (declining to recognize a cause of action for hostile work environment under the ADEA (citing Lyles, 151 F. App'x at 172)).  We, too, recognize such a cause of action.

with an employee's work performance.'"  Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006),

overruled in part on other grounds by Burlington N., 548 U.S. 53 (quoting Harris, 510 U.S. at 23;

and citing Andrews, 895 F.2d at 1482).

Defendant argues that the Amended Complaint fails to state a hostile work environment

claim in violation of Title VII, the ADEA, or the PHRA because the Amended Complaint fails to

plausibly allege:  (1) the existence of respondeat superior liability, and (2) that the discrimination

against Plaintiff was pervasive and regular.  The Amended Complaint alleges that Plaintiff was

harassed because of her sex and her age on two occasions:  (1) Mr. Johnson's statement, made

prior to October 2011, that Plaintiff looked good for her age (Am. Compl. ¶ 45); and (2)

Headmaster Lehman's March 22, 2013 statement that Plaintiff was "in the way" of younger

teachers (id. ¶¶ 62-64).

"[A]n employer may be vicariously liable for an employee's unlawful harassment only

when the employer has empowered that employee to take tangible employment actions against

the victim . . . ."  Vance, 133 S. Ct. at 2443.  A "tangible employment action" is one that

"effect[s] a 'significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits.'"  Id. (quoting Burlington, 524 U.S. at 761).  The Amended Complaint does

not allege that Mr. Johnson was empowered to take tangible employment actions against

Plaintiff.  Indeed, the Amended Complaint alleges that with respect to each tangible employment

action concerning Plaintiff, Defendant acted through the Headmaster, not Mr. Johnson.  (See

Am. Compl. ¶¶ 35, 38, 48-49, 53-54, 62-64.)   We therefore conclude that the Amended

Complaint does not plausibly allege a vicarious liability hostile work environment claim based

on the actions of Mr. Johnson.

Defendant argues that the Amended Complaint's remaining allegation of harassing conduct -- Headmaster Lehman's statement that Plaintiff was "in the way" of younger teachers (id. ¶¶ 62-64) -- cannot alone constitute pervasive and regular discrimination that would establish a hostile work environment in violation of the Title VII, the ADEA, or the PHRA. "'A Title VII plaintiff does not prove . . . the existence of a hostile working environment by alleging some magic threshold number of incidents.'"  West v. Philadelphia Elec. Co., 45 F.3d 744, 757 (3d Cir. 1995), abrogation on other grounds recognized by Mandel v. M & Q Packaging Corp., 706 F.3d 157, 166-67 (3d Cir. 2013) (quoting Daniels v. Essex Grp., 937 F.2d 1264, 1275 (7th Cir. 1991)).  However, we agree that the allegations regarding this single, isolated incident, which did not encompass a physical threat, are insufficient to plausibly allege a hostile work environment claim under Title VII, the ADEA, or the PHRA.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"); Whitesell v. Dobson Commc'n, 353 F. App'x 715, 717 (3d Cir. 2009) (finding that older assistant sales manager was not subjected to age-based hostile work environment because her supervisor's remarks about her age were neither physically threatening nor humiliating); Pettway v. City of Philadelphia, Civ. A. No. 11-78, 2011 WL 2987994, at *4 (E.D. Pa. July 22, 2011) (dismissing hostile work environment claim involving three incidents in one year period); Mayo v. Mercy Phila. Hosp., Civ. A. No. 10-5261, 2011 WL 1045101, at *3 (E.D. Pa. Mar. 22, 2011) (dismissing hostile work environment claim involving three incidents in five month period).  As the Amended Complaint alleges only one instance of harassing conduct by an individual empowered to take tangible employment action against Plaintiff, we therefore conclude that the Amended Complaint fails to state plausible hostile work environment claims in violation of Title VII, the ADEA, or the

PHRA, and we grant Defendant's Motion as to Plaintiff's hostile work environment claims in Counts I, II, and III.

## IV.      CONCLUSION

For the foregoing reasons, we grant Defendant's Motion to Dismiss as to Plaintiff's hostile work environment claims in violation of Title VII, the ADEA, and the PHRA asserted in Counts I, II, and III, and we deny the Motion as to Plaintiff's sex and age discrimination and retaliation claims in violation of Title VII, the ADEA, and the PHRA asserted in Counts I, II, and III.  Although Plaintiff has not sought leave to file a second amended complaint, we grant her leave to amend Counts I, II, and III to state facially plausible hostile work environment claims in violation of Title VII, the ADEA, and the PHRA against Defendant.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) ("[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))).  An appropriate order follows.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.